IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
|  | : | NO. 05-1112 |
| Petitioner, | : |  |
|  | : |  |
| v. | : | CRIMINAL ACTION |
|  | : | NO. 98-301-1 |
|  | : |  |
| ANGEL REYES, | : |  |
|  | : |  |
| Respondent. | : |  |

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

Presently before the Court is a *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. section 2255 filed by Angel Reyes ("Petitioner"). Petitioner is currently incarcerated at the United States Penitentiary located in Allenwood, Pennsylvania. For the reasons that follow, it is recommended that this Motion should be denied with prejudice and dismissed without an evidentiary hearing.

I.   **FACTS**.[1]

Petitioner was charged by indictment, along with his brother Luis Reyes, with conspiracy, conspiracy to commit Hobbs Act robbery, aiding and abetting three carjackings, and aiding and abetting three Hobbs Act robberies. The charges stemmed from

---

[1] These facts are taken from Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, the Government's Response, and the Petitioner's Traverse.

three carjackings committed within two days by Petitioner and his brother.[2]  Trail was scheduled to begin on September 25, 1998, and during a pre-trial suppression hearing, Petitioner advised the Honorable Franklin S. Van Antwerpen that he wanted to change his plea to guilty.  Petitioner then admitted his participation in the carjackings during an extensive plea colloquy.

Petitioner pleaded guilty pursuant to an oral plea agreement with the Government in which he stipulated to a base offense level of 20, a 2-level enhancement for carjacking, a 4-

---

[2]Petitioner and his brother first forced a man into his van in a Wal-Mart parking lot on April 10, 1998.  They wrapped the victim's jacket around his head and he felt a gun held to the back of his head.  Petitioner and his brother robbed the victim, taking $110, his baseball cap, and his ATM card.  They demanded the victim's ATM PIN number, but when they were unsuccessful at using the card, they abandoned him and his car.  When Petitioner was arrested three days later, he was wearing the victim's baseball cap.

Four hours later, Petitioner and his brother grabbed a husband and wife who were putting their three year-old son into his carseat in a Wal-Mart parking lot, and shoved them into their vehicle.  The victims saw that one of the perpetrators appeared to have a handgun.  Petitioner and his brother robbed the victims of cash, jewelry, a credit card, and an ATM card and its PIN number.  A bank surveillance camera showed Petitioner using the stolen ATM card to obtain $300.  Petitioner and his brother threatened to kill the victims if they reported the abduction and robbery.

The next day, Petitioner and his brother forced a man and his 16 year-old son into their van at gunpoint in a Denny's Restaurant parking lot, and took from the father his wallet, his ATM card and PIN number, and $150.  They also took a VCR, a computer, and a television that they found in the van.  Petitioner and his brother drove around and obtained $172 from an ATM machine using the victim's card.

level enhancement for use of a dangerous weapon, and a 4-level enhancement because an abduction was involved.

Petitioner filed a motion to withdraw his guilty plea on December 21, 1998, and subsequently withdrew that motion. Following preparation of a pre-sentence report, Petitioner filed a second motion to withdraw his guilty plea.  That motion was denied by Judge Van Antwerpen.  Petitioner's final guideline calculation was 31.  Petitioner objected to the dangerous weapon enhancement prior to sentencing despite his guilty plea stipulations to the specific offense characteristics.  Judge Van Antwerpen adopted the findings in the presentence report, and included the dangerous weapon enhancement.  Thus, Petitioner's final guideline range was 188 to 235 months.

In sentencing Petitioner, Judge Van Antwerpen stated that the sentence imposed was consistent with the nature of the offenses, Petitioner's characteristics, and the need for deterrence and protection of the public.  On April 13, 1999, Petitioner was sentenced to 235 months' imprisonment, the high end of the guideline range.  Petitioner did not file a direct appeal from his sentence, therefore his judgment of sentence became final on May 13, 1999, when Petitioner's appeal period before the Third Circuit expired.  See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999)(holding "[i]f a defendant does not pursue a timely direct appeal to the court of appeals, his or

her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.")

Petitioner filed a pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. section 2255 on February 24, 2000, and subsequently filed a motion to withdraw that motion on April 25, 2000.  On April 28, 2000, the Court granted the motion to withdraw, struck the motion to vacate without prejudice, and granted Petitioner an additional 120 days to file a new motion.

On March 5, 2005, Petitioner filed the instant pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. section 2255.[3]  On March 10, 2005, this case was reassigned from Judge Van Antwerpen to the Honorable Lawrence F. Stengel.  On March 22, 2005, Judge Stengel ordered the Government to respond to the Motion.  The Government filed a Response on April 20, 2005.  Judge Stengel referred it for preparation of a Report and Recommendation on April 21, 2005.  Petitioner filed a Traverse to the Government's Response on May 4, 2005.

Petitioner's Motion to Vacate, Set Aside or Correct Sentence contains the following claims: (1) Petitioner was

---

[3] Pursuant to Burns v. Morton, 134 F.3d 109, 113 (3d Cir., 1998), because Petitioner signed the Motion on March 5, 2005 but it was not docketed or filed by the Clerk of Court until March 9, 2005, according to the prison mailbox rule the date of filing was March 5, 2003.

deprived of his Sixth Amendment right to trial by jury when sentenced beyond the statutory maximum; and (2) actual innocence. Mot. to Vacate, p. 5.  The Government contends that the instant Motion should be dismissed because the standards enunciated by the United States Supreme Court in United States v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005), should not be applied retroactively on collateral review, and because Petitioner has procedurally defaulted his claims.  Petitioner contends, in his Traverse, that Booker should be retroactively applicable to cases on collateral review, and his actual innocence excuses his procedural default.

**II.    DISCUSSION.**

Although not raised by the Government as an affirmative defense, the instant Motion may be untimely.  Pursuant to the recently issued Third Circuit decision in United States v. Bendolph, 2005 WL 1134860, at *9 (3d Cir. May 16, 2005), this Court shall sua sponte examine the time-bar issue.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on the filing of a section 2255 motion by federal prisoners.  See 28 U.S.C. § 2255; Miller v. New Jersey State Dep't of Corrs., 145 F.3d 616, 619 n.1 (3d Cir. 1998)(holding one-year limitations period is not jurisdictional bar and subject to equitable tolling).  This one-year limitations period begins on the latest

of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  See 28 U.S.C. § 2255.

Petitioner's conviction became final on May 13, 1999, when his appeal period before the Third Circuit expired. Pursuant to the AEDPA, Petitioner had one year from that date to timely file a section 2255 motion, or until May 12, 2000. Petitioner filed the instant pro se Motion on March 5, 2005. Thus, under section 2255(1), the Motion is clearly time-barred.

Neither of the scenarios in section 2255(2) or (4) are applicable to this case.  Pursuant to 28 U.S.C. section 2255(3), however, if a claim based on a newly recognized right is filed within one year after the 'right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review,' then the claim is timely.  See 28 U.S.C. § 2255(3).  Here, Petitioner's conviction became final on May 13,

1999, Booker was decided on January 12, 2005, and Petitioner filed this Motion on March 5, 2005.  Assuming that the Booker rule constitutes a newly recognized right, the issue under section 2255(3) is whether Booker applies retroactively.

Petitioner specifically argues in his Traverse to the Government's Response that Booker should be applied retroactively.  The Third Circuit has recently decided that the rule of law announced in Booker may not be retroactively applied to both initial and second or successive section 2255 motions where the judgment of conviction was final prior to January 12, 2005, the date Booker was issued.  See Lloyd v. United States, 2005 WL 1155220 (3d Cir. May 17, 2005) ("[b]ecause Booker announced a rule that is 'new' and 'procedural,' but not 'watershed,' Booker does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date Booker was issued"); In re Olopade, 403 F.3d 159 (3d Cir. 2005)(request for leave to file second or successive habeas corpus motion denied because petitioner could not make a "prima facie showing" that Booker constitutes "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.")

This Court must also examine whether circumstances or facts exist which justify equitable tolling of the one-year limitations period.  The United States Court of Appeals for the

7

Third Circuit has held that "equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" Miller, 145 F.3d at 618 (quoting Shendock v. Dir., Ofc. of Workers' Comp. Programs, 893 F.2d 1458, 1462 (3d Cir.)(en banc), cert. denied, 498 U.S. 826 (1990)). The Petitioner "must show that he . . . 'exercised reasonable diligence in investigating and bringing [his] claims.' Mere excusable neglect is not sufficient." Id. (quoting New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997) and citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). The Third Circuit has set forth the following three circumstances in which equitable tolling is permitted: (1) if the [Respondent] has actively misled the [Petitioner]; (2) if the [Petitioner] has in some extraordinary way been prevented from asserting his rights, or (3) if the [Petitioner] has timely asserted his rights mistakenly in the wrong forum. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001)(citing Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)(citations omitted)). In the instant case, none of the circumstances for equitable tolling are present, and there is no indication that Petitioner exercised reasonable diligence in filing his section 2255 Motion. Thus, Petitioner should not be granted equitable relief in the form of equitable

tolling.[4]

Lastly, because this section 2255 Motion may be disposed of procedurally, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id. Petitioner has failed to make a substantial showing of the denial of a constitutional right, and it is not recommended that a certificate of appealability should be issued.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this        day of May, 2005, IT IS RESPECTFULLY RECOMMENDED that the Motion pursuant to 28 U.S.C. section 2255 should be DENIED with prejudice and DISMISSED without an evidentiary hearing.  There is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
ARNOLD C. RAPOPORT
United States Magistrate Judge

---

[4] In view of this decision, this Court will not address the merits of the Motion nor the Government's argument that Petitioner procedurally defaulted his claims.